My name is Francisco Rodriguez and I am appearing on behalf of Sarah Blair. I would like to reserve three minutes for rebuttal. Unlike most of the case law that applies hensely in interpreting whether a fee application is reasonable, the district court in this case was not sitting as a trial court. The district court was sitting in an appellate capacity on a social security disability administrative decision. That complicates things because whereas a trial court can easily discern whether individual claims are completely independent and could be filed independently as a separate cause of action, in an appellate situation the court necessarily has to decide whether in the context of the whole case the errors identified are harmless. As a result, you have to look at that common core of facts. It makes no sense to evaluate the reasonableness of the fee based on how appellate counsel frames the issues in his or her brief. We could have framed the issues as whether the ALJ properly evaluated the medical evidence. We could have framed the issue as whether the ALJ properly evaluated the medical evidence as to Ms. Blair's mental impairments. The court and opposing counsel have both indicated that there were issues and sub-issues. Once the court goes down this road of trying to evaluate an appellate case in terms of issues rather than a cause of action or a distinct claim that could be presented in a trial level situation, it's difficult to establish any kind of objective framework as to how you define those issues. The court says that we raised two issues as to the evaluation of some of these opinions where I challenged their consideration of bipolar disorder versus their evaluation of specific functional limitations. It's unclear whether even the district court thought of those as individual claims or related claims. And that's where you get into these problems. I don't, I don't, I'm sorry, I'm dense. I'm not quite sure I know where you're going with this argument. Well, what I'm suggesting is in a social security disability case, it makes no sense to use the first prong of Hensley. Hensley gives you two paths. It's a road map for evaluating reasonableness. Once you decide that But even though they used the first prong, could we affirm on the second prong? Yes. Okay. So let's go to the second prong then. Certainly, Your Honor. Hensley says in the end, the result is what matters. And we don't dispute that. But what we do dispute is that we achieved anything less than excellent results on behalf of Ms. Blair. In a social security case, as far as the appellate victories in social security disability cases, this was not a trivial victory. We won the reconsideration of every medical opinion relating to her mental functioning. Now, I guess But in terms of the total result Oh, I'm sorry. In terms of the total results, it was only a partial victory. Isn't that correct? Certainly, we would have liked to achieve more. Yes, no doubt. Yeah. So, but didn't that, didn't the court take that into consideration in arriving at the attorney fee, or rather on the recovery portion? Honestly, Your Honor, the court took a lot of things into account, some of which it was permissible to take into account and some of which it wasn't. And the ones that were permissible, we don't believe that the district court's interpretation of those was reasonable. So, for example, yes, they can consider that we did not achieve all that we sought out to do. But Well, isn't that the key, though, to this particular issue? No. It certainly is a framework that the court should use in evaluating the reasonableness of the fee. But ultimately, what Hensley says is, even if you don't achieve everything that you sought out to achieve, even if you don't win on every contention that you raise, if you achieved, and they use the term substantial relief, you're entitled to a fully compensatory fee. And so, we, the question is, looking at the result we got, was it worth the time we spent? Did we go off meandering off on frivolous claims? No. There's no indication here. Did we achieve only minor or trivial relief? No. We achieved substantial relief where the court was required to evaluate all of these medical opinions, re-evaluate whether she could persist throughout a regular work day, and re-evaluate whether her mental functioning would allow her to tolerate any job given her stress limitation. There's kind of a legal framework issue here, and I have a couple questions about that. Number one, to the extent that the district court may have erred in slicing and dicing multiple approaches to what ultimately is a single claim, let's say that the court did err in that, do you think that, based on the decision here, that that kind of spilled over then into the excellent results analysis? I do, Your Honor, although it's frankly very difficult to ascertain because the court just chose some numbers that it's very difficult to divine. Did you reduce the fee based a certain amount on substantial justification, and then a little bit more based on the not all of these just supposedly independent reasons for the total reduction that you gave? I think because of the court's failure to meet the Ninth Circuit standard for showing your work as far as the fee that you award, it's impossible for this court to evaluate the impact of individual failures as to the various considerations, and as a result That brings me then to my second question. The district court's rationale seemed to be, well, we only had a limited remand, therefore that is almost per se inconsistent with excellent results. And I'd appreciate your analysis of that reasoning, and also what you think are the cases that best support what you're arguing to us now. Well, I think that Hensley specifically says in footnote 11, I believe, that just because you don't achieve everything you sought out to achieve, that's not necessarily even significant. What matters is, is the ultimate result, looking at that, was that substantial? Was that ultimately an excellent result for your client? I think it's further complicated in this case by the agency policy and agency practice was to give her a de novo hearing on remand. The court also Are you saying she's going to get a de novo hearing and be able to put on new evidence now? I'm saying yes, and she did. And then you're saying that, so in that case, when the district court is basing its decision on the so-called limited remand, should it have looked at what actually happened then? Yes, and if the government disagreed with what actually happened, the government certainly could have indicated that. But its own policies basically provide, when you reverse a Social Security case and send it back to Social Security, it reactivates the application. So they can't just look at these narrow issues, or generally don't at least, because they're not just considering the same period that they were considering before. They now consider from the initial decision all the way through the current decision. So when you get a new decision, it applies not just to the two or three years before, but all the way through the next two or three years that it took for the case to wind up in the appellate courts. And they have to take new evidence as to that period because they're typically not just deciding it all the way through the date of the last decision, but the date of the current decision. Did you want to reserve time? I did. Thank you. Good morning, Your Honors. Thomas Ellsbury for the Commissioner of Social Security. I guess I will begin with the first prong of Hensley. The allegation that there is a common core of facts and related issues cannot really be applied to the closed record used in an appellate court. That's what distinguishes it from many of the cases out there that need to comply with Hensley. Here we have a closed record with facts on different legal issues. We have vocational facts. We have medical facts. We have lay testimony. We have other source medical testimony or evidence, which is therapists or counselors. When we get into evaluating medical opinions, we have treating physicians. Do they get controlling weight or no weight or some weight? These are all factors that the ALJ has to consider, different legal factors they have to consider in the facts of that doctor. And then with the vocational, there's different law and regulations that apply to the ALJ's analysis of the vocational expert testimony or substantial gainful activity in the past relevant work of the claimant. So clearly, the first prong of Hensley is satisfied. There are distinct, discreet legal issues involving different fact patterns within the closed record. So I believe that it's clearly met. As Aguirre has said, or this court has said in Aguirre, claims and issues are the same. They raise nine issues, or Ms. Blair raised nine issues, as the court noted. And they prevailed on some, and they did not prevail on the others. And under the first prong... Didn't, wasn't the argument that it's the combination of these afflictions that led to the disability? And if that's the case, aren't they all tied together? I mean, the argument wasn't that, well, I have one disability that caused this, this period and a different disability for this period. It was kind of all of them as a group considered as a whole led to, led to my inability. And, yes, and I was... It's hard, it's hard for me to see how that first prong, then, of discreet separate issues is satisfied. I mean, it does seem to me they're really up one to two. Because at that point, when you're looking at the combination, the individual and combination of impairments, whether they're severe and to what degree it impacts the ability of the claimant, that's a step two, and also subsequently a step three evaluation, which has different regulations guiding the ALJ's findings. So what this takes, you may have an impairment, but it may not be medically determinable, or it may not be severe. These all have different regulatory requirements that the ALJ has to satisfy to make his finding a step two, or make her finding a step two. It's the same thing with step three, whether these impairments in combination or equally, in combination or individually, equal or meet a listing, which is a list of, per se, disabling impairments. So it, in fact, is a discreet legal issue at that point. Counsel, I have a question with respect to whether there was an adequate explanation made with respect to the fees on fees portion. That was, the request was for $737, but only $220 were allowed. What's your contention on that point? It was not the most clear, but I believe it was sufficiently clear in consense. We're agreed so far. I looked at those numbers. One of the ways I looked at that, you can look at the EJ reduction on just the fees on fees, which was the, I believe it was four hours and $700 some dollars. But when you combine the total EJ, they were granted their, the entire EJ fee request, which was 3.5 hours for the initial briefing. And then on the fee on fee, I think what the court is saying is, what the court said, actually I'll say is, for the same reasons I found that it wasn't, the fees were not reasonable because of their degree of success. I equate that to here as well. In other words, the fees on fees, they did not prevail. The work they did, which constitute the fees on fees, they did not prevail. But in the absence of a better explanation, shouldn't the fees on fees be awarded on the same proportion as on the main fees, roughly 75%? Roughly. That would be one argument. Which is not the case here. Right. It is close to a 75% reduction here. I mean, one of the problems I had is when I put all these numbers on paper, they don't agree. You know, it's very hard. I mean, I see what the, Ms. Blair wants and her 7.5 hours of EJ, and then you count her with 3.5, and then we have the government, I mean, the court awarding a number, and then you try to backtrack that through the hourly rate. It's actually pretty hard. We have not only, we don't know what the rationale is, but we can't, and because we don't know that, we can't figure out how you come up with these numbers. Not you, but I'd say the district court. And so it just seems that, as you were candid in your response, it's perhaps not the clearest. It's true, but I believe the district court's brief discussion on the fees on fees is sufficient and satisfies Hensley. What we do know is that the district court did not use the same ratio on the fees. So the obvious formula is rejected. What we don't know is, once you get rid of the obvious thing in the room, what else is there in that room that's guiding the analysis? My response would be that Hensley does not require that of the district court. Quote from Hensley, the district court may attempt to identify specific hours that should be eliminated or it may simply reduce the ward account for limited success. I take it we are reviewing under abuse of discretion. Exactly. So I don't believe, despite the brevity of the district court's discussion of the fees on fees, I don't believe it takes it beyond the pale of reasonableness. When you say limited success, that seems to be pervasive in this case, this sort of limited success notion. But in fact, she went back, there's new evidence, new findings, new approaches, I'm having some trouble understanding why, for example, she didn't get excellent results. Because you can get an excellent result without getting everything. Do you agree with that? Yes. So what is the sliding scale? I think that's the exact answer. There's a sliding scale and it's within the district court's discretion to determine what's excellent and what is not so excellent. And here the district court did explain why he found it not to be excellent. Didn't receive payment. Didn't receive a guarantee of a hearing. As despite what was presented here, there is no requirement. The first place a remand goes to is the appeals council, who may take it and render a decision on their own without sending it to an ALJ or for a hearing. Or they may even remand it to the ALJ without a hearing. Can we take into account, in terms of excellence, what actually happened on remand? Apparently here there was a whole new hearing with new evidence that was received. Is that correct? I have no idea. I have no evidence in the record. I don't know. It was represented by appellant's counsel just now that there was a new hearing. I don't know that that's evidence. That's appellant counsel's... No, no, but I was intrigued about that argument. Would that have been excellent? When we're deciding whether there's an excellent result, can we look downstream at what happened? I guess in this record we can't because there's nothing in the record, even if legally we could. I would also argue that it still goes in favor of the court because if ultimate payment is what establishes excellent results, they didn't get payment before the court, so they didn't get excellent results. Their very argument defeats the argument that the district court should have found excellent results. And, again, we're at the abusive discretion standard. Is it beyond the pale of reasonableness for the district court to have found a 75 percent reduction in fees on fees versus a 25 percent reduction on the merits and to find that the results achieved were not excellent? And for the reasons that the district court gave. Can you point out an argument to the judge? Look, judge, can you explain to us why you're knocking 75 percent off of the fees on fees, but only 40 percent off on the fees? I'm sorry, did anybody ever make that argument to the court? Judge, why aren't you giving the same haircut to the fees on fees as you are to the everything else? I don't believe so, but I can't state positively. I didn't handle the case at the earlier stages. I came to this case quite late, so I don't believe so. At the only point I think that would have come up, obviously, would have been in 59E. And I'm not aware that there's a Rule 59E filed in this case objecting to the court's finding on the fees. All right. And if the Court has no more questions. Thank you. Thank you. Thank you. Can you comment on whether we can look back to what happened in the hearing or whether we just look at the district court's evaluation of the prospective relief? Well, you're the Ninth Circuit Court of Appeals. You can do whatever you want, but it is true. Well, no, we can't. That's a common misconception. We have to do what the precedent permits. It is true that there is not evidence in the record as far as what ultimately happened. What there is evidence of is uncontested evidence that she was going to get a new hearing, that the commissioners ---- The way I read the remand, it wasn't I'm remanding for a new hearing. It was I'm remanding for the district court to explain. It's true. I mean, not the district court, but the ALJ, to explain the result. Well, to reconsider those opinions. Yeah, but there was nothing in there about a remand for a de novo hearing or more evidence or anything like that. Right, but there are two things that are in the record. One, the commissioner's procedures that explicitly say a court remand will generally result in a de novo hearing. Secondly, there's the declaration of Ann Kaiser, which says in her significant experience doing Social Security cases in this jurisdiction at this hearing office, in every case that she had had, her client got a new hearing with a new opportunity to testify, and actually the court in this case specifically said we could submit new evidence, get the evaluations from her treating doctor that weren't in the preexisting record. So we knew ---- But you did ask for an award of benefits, did you not? And you did not get an award. You got a remand. We did. We wrote ---- there was one sentence in our brief asking for an award of benefits, one sentence opposing it in opposing counsel's brief. We did seek that. I have a duty to seek that if there's an arguable basis for it. But as this court well knows, the district court has great discretion in terms of whether to grant that or not. I feel like I have an obligation to do that, and we shouldn't be discouraged from raising that issue simply because we're going to lose in most cases, especially when we haven't really wasted the court's time. There's no indication the time I spent on this case had any significant relationship to our request for an award of benefits. I do just want to say that with respect to the calculation of the award of benefits, opposing counsel keeps referring to Hensley, but as this court well knows, the Supreme Court often speaks in broad general terms because of the cases they're dealing with. The Ninth Circuit has extensively interpreted the obligation of the district court to provide its work as far as calculating the amount of benefits. And in Moreno, Padgett, and Costa, it's clear you can't just provide some explanation. You need to show how you calculated it. We shouldn't have to get out a calculator and try and guess. Thank you. Thank you. I'd like to thank both counsel for your argument. Valera v. Colvin is submitted.
judges: O'scannlain, Ebel, McKeown